IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| BENJAMIN SWAIN, et al. | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 7:07-CV-86-HL |
| FLUE-CURED TOBACCO COOPERATIVE STABILIZATION CORPORATION and D. LAMAR DELOACH, | : | |
| Defendants. | : | |

# ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. 12). For the following reasons, Plaintiffs' Motion to Remand is granted.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Factual Background

Defendant Flue-Cured Tobacco Cooperative Stabilization Corporation ("Stabilization") is a North Carolina agricultural cooperative with its principal place of business in North Carolina. Stabilization was established in 1946 to administer the federal tobacco price support program under contractual agreement with the United States Department of Agriculture's Commodity Credit Corporation. In 1982 Congress enacted the "No Net Cost Tobacco Program Act of 1982" (the "No Net Cost Act") to ensure that the tobacco price support program would operate at "no net cost to the taxpayer" by requiring

1

that the producers of quota tobacco "share equitably in helping to eliminate losses which may be incurred in carrying out the program." Pub. L. No. 97-218, § 2, 96 Stat. 197 (1982). Thus, under the Act, producers of quota tobacco were required to pay an assessment per pound of tobacco sold to fund the price support program. 7 U.S.C.A. § 1445-2(c) (1999), *repealed by* Pub. L. No. 108-357, 118 Stat. 1523 (2004). These assessments were collected by Stabilization, which either maintained the assessments in a separate fund or in an account with the Commodity Credit Corporation. Id. In October 2004, Congress repealed the legislation that created the federal price support program for tobacco. Pub. L. No. 108-357, 118 Stat. 1523.

### B. Procedural History

On May 23, 2007, Plaintiffs filed this action against Stabilization and one if its directors, D. Lamar DeLoach, in the Superior Court for Berrien County, Georgia. DeLoach is a citizen of the state of Georgia, and as stated above, Stabilization is incorporated in North Carolina and its principal place of business is in North Carolina. Plaintiffs contend in their complaint that the assessments they paid to support the federal price support program enabled Stabilization to amass a substantial amount of stockholders equity. Because the federal price support program no longer exists, Plaintiffs contend that they are entitled to a distribution of Stabilization's reserved capital. Thus, Plaintiffs seek an accounting of their interest in the cooperative as well as a distribution of that interest. Plaintiffs have also asserted a breach of contract claim and a claim for attorney's fees against Stabilization. Plaintiffs' claims against DeLoach are more limited. Plaintiffs allege in their complaint that "Defendant

DeLoach, in his capacity as Director of Stabilization, breached the following duties owed to the Plaintiffs by wrongfully (a) failing to approve and issue dividends to Plaintiffs; (b) failing to issue and account for stock certificates for Plaintiffs; and (c) failing to issue and account for the capital earnings of Stabilization to Plaintiffs. (Pla.'s Compl. ¶ 49).

Defendant Stabilization filed a Notice of Removal (Doc. 1) on July 3, 2007, asserting that DeLoach, the only Georgia defendant, was fraudulently joined, and therefore, there is federal diversity jurisdiction because Plaintiffs are Georgia citizens, Stabilization is a North Carolina citizen, and the amount in controversy exceeds $75,000. Stabilization also asserted that there is federal question jurisdiction. On August 2, 2007, Plaintiffs filed a Motion to Remand (Doc. 13) contesting the assertions made in Stabilization's Notice of Removal and requesting that this Court remand the case to the Superior Court for Berrien County.

## II. DISCUSSION

On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). The removal statute is to be narrowly construed with all doubts construed against removal to federal courts. Id. Plaintiffs' Motion to Remand asserts that this Court has neither federal diversity jurisdiction nor federal question jurisdiction over this case.

As to the presence of diversity jurisdiction, Plaintiffs contend that they are not completely diverse from all Defendants because D. Lamar DeLoach, a defendant, is a Georgia citizen, as are all Plaintiffs. Defendant Stabilization contends that DeLoach was fraudulently joined, and therefore, this Court should ignore DeLoach's citizenship in

3

determining whether there is complete diversity. In addition, Plaintiffs contend that even if there is complete diversity, Defendant Stabilization has failed to establish that the amount in controversy exceeds $75,000. In addressing whether diversity jurisdiction exists, this Court will address the diversity and amount in controversy issues in turn. After addressing the diversity jurisdiction issue, the Court will then address Defendant's contention that federal question jurisdiction exists.

The citizenship of fraudulently joined defendants is ignored for purposes of determining whether all plaintiffs are completely diverse from all defendants. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Defendants raising a fraudulent joinder claim have the heavy burden of proving fraudulent joinder by clear and convincing evidence. Id. Defendants can prove that a resident defendant was fraudulently joined by proving either: "'(1) there is no possibility that plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" Id. (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). A district court considering a fraudulent joinder allegation must make the determination of whether a resident defendant was fraudulently joined by looking to the plaintiff's pleadings at the time of removal, as supplemented by any affidavits and depositions submitted by the parties. Id. Defendant Stabilization contends that DeLoach was fraudulently joined because there is no chance that Plaintiff can recover from

4

DeLoach under state law.[1]  This Court agrees.

Under North Carolina law, directors of a corporation generally owe a fiduciary duty to the corporation. Governors Club, Inc. v. Governors Club LP, 152 N.C. App. 240, 248, 567 S.E.2d 781, 786-87 (2002); see also N.C. GEN. STAT. ANN. § 55-8-30 (2007).  The Commentary to N.C. Gen. Stat. § 55-8-30, which is the North Carolina statute concerning the general standards for directors, emphasizes that directors owe a fiduciary duty to the corporation, not to individual shareholders. See N.C. GEN. STAT. ANN. § 55-8-30 cmt.  The Commentary states that a prior version of the statute provided that directors owed a fiduciary duty "to the corporation and to its shareholders." Id.  The drafters of the current statute removed the language "'and to its shareholders' in order to avoid an interpretation that there is a duty running directly from directors to the shareholders that would give shareholders a direct right of action on claims that should be asserted derivatively." Id.  Thus, when it is alleged that a director has breached his fiduciary duty, the action is appropriately maintained by the corporation and not any individual shareholder. Governors Club, Inc., 152 N.C. App.

---

[1] As this is a diversity case, state substantive law will apply. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  To determine which state's substantive law will apply, courts use the choice of law rules of the forum state, which in this case is Georgia. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 491 (1941).  Georgia courts apply the substantive law of the state of incorporation to cases involving a corporate director's liability for the director's actions that affect the internal affairs of the corporation, such as the decision whether to issue dividends. See Diedrich v. Miller & Meier & Assocs., 254 Ga. 734, 735-36, 334 S.E.2d 308, 310 (1985); see also RESTATEMENT (SECOND) CONFLICTS OF LAWS § 309.  Here, Stabilization's state of incorporation is North Carolina, and the allegations of wrongdoing against Defendant DeLoach involve actions that affect the internal affairs of Stabilization.  Accordingly, this Court will apply North Carolina law to determine whether Plaintiff has established a cause of action against DeLoach.

at 248, 567 S.E.2d at 786-87.

There are two exceptions, however, to the general rule that shareholders cannot maintain individual causes of action against corporate directors. A shareholder can maintain an individual cause of action against a director for injuries to the corporation: "(1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder," or "(2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders." Barger v. McCoy Hillard & Parks, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); see also Underwood v. Stafford, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967); Howell v. Fisher, 49 N.C. App. 488, 492, 272 S.E.2d 19, 22-23 (1980).

Here, Plaintiffs claim against DeLoach states that "Defendant DeLoach, in his capacity as a Director of Stabilization, breached the following duties owed to the Plaintiffs by wrongfully (a) failing to approve and issue dividends to Plaintiffs; (b) failing to issue and account for stock certificates for Plaintiffs; and (c) failing to issue and account for the capital earnings of Stabilization to Plaintiffs." (Plas.' Compl. ¶ 49). Though Plaintiffs' complaint does not specifically allege that DeLoach breached his fiduciary duty, the substance of Plaintiffs' allegations against DeLoach is that he breached his fiduciary duty. As stated above, however, this duty was owed to the corporation and the shareholders collectively, not individually. Plaintiffs therefore cannot maintain an individual action against DeLoach for breach of his fiduciary duty unless one of the two exceptions listed above applies.

Under the first exception, known as the special duty exception, the special duty owed to the shareholder must have an origin independent of the plaintiff's status as a shareholder.

Howell, 49 N.C. App. at 492, 272 S.E.2d at 22. Plaintiffs' claims against DeLoach are not based on the breach of a special duty but are instead based on the breach of the fiduciary duty that DeLoach owed to the corporation. Plaintiffs seem to contend that DeLoach owed them a special duty because he was elected by Stabilization's Georgia members to serve on the board of directors, but DeLoach did not owe Plaintiffs a special duty just because Plaintiffs are Georgia members. DeLoach could not, for example, unilaterally take action on behalf of the Georgia members. Because Plaintiffs' claims against DeLoach do not allege the breach of a special duty owed to Plaintiffs, the special duty exception does not apply.

As to the second exception, Plaintiffs have not "suffered an injury separate and distinct from that suffered by other shareholders." See Barger, 346 N.C. at 658, 488 S.E.2d at 219. Plaintiffs seek to hold DeLoach liable for his alleged participation in decisions by Stabilization's directors (1) not to issue dividends, (2) not to issue stock certificates, (3) and not to issue and account for Stabilization's capital earnings. These decisions, however, affected all of Stabilization's members and, therefore, Plaintiffs have not suffered an injury that is separate and distinct from any injured suffered by the other members. Accordingly, the second exception does not apply.

Because Plaintiffs claims against DeLoach are brought directly and none of the exceptions that would permit Plaintiffs to maintain a direct action apply, this Court finds that DeLoach was fraudulently joined because there is no possibility that Plaintiffs could recover directly from DeLoach under North Carolina state law. As a result, this Court ignores the citizenship of DeLoach for purposes of determining whether all plaintiffs are completely

diverse from all defendants. This leaves Defendant Stabilization as the sole defendant, and Stabilization, as a North Carolina citizen, is diverse from all Plaintiffs, who are all Georgia citizens. Therefore, this Court has diversity jurisdiction if the amount in controversy exceeds $75,000. See 28 U.S.C.A. § 1332 (2006).

When a plaintiff's state court complaint contains an unspecified demand for damages, "a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." Leonard v. Enterprise Rent-A-Car, 279 F.3d 967, 972 (11th Cir. 2002). The removing defendant can carry its burden "if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). If the amount in controversy is not facially apparent from the complaint, the court must look to the defendant's notice of removal and the court may require other evidence relevant to the amount in controversy at the time the case was removed. Id. "A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." Id. at 1319-20.

In determining whether the amount in controversy requirement is met, a single plaintiff may aggregate all claims against a single defendant. Snyder v. Harris, 394 U.S. 332, 335 (1969). In a case in which there are multiple plaintiffs and at least one named plaintiff in the action satisfies the amount in controversy requirement, district courts can exercise supplemental jurisdiction over other plaintiffs joined in the action irrespective of whether

8

those other plaintiffs satisfy the amount in controversy requirement. Exxon Mobil Corp. v. Allapattah Servs, Inc., 545 U.S. 546, 549 (2005). Thus, this Court will have diveristy jurisdiction over the claims of all Plaintiffs if one of the Plaintiffs meets the amount in controversy requirement.

Here, Plaintiffs' complaint contains an unspecified demand for damages. Not only is there an unspecified demand for damages in Plaintiffs' complaint, but there is not even the mention of any dollar amount anywhere in Plaintiffs' complaint. As a result, it is not facially apparent from Plaintiffs' complaint that the amount in controversy requirement is met. Therefore, this Court must look to Defendant's Notice of Removal and other evidence that Defendant has used to support its assertion that the amount in controversy exceeds $75,000.

Defendant contends that there are two independently sufficient grounds to support a finding that the amount in controversy is met in this case. First, Defendant asserts that the amount in controversy requirement is satisfied "because the allegations of the complaint suggest that at least one Plaintiff's claims exceeds $75,000." (Def.'s Br. Resp. Plas.' Mot. Remand p. 17). Defendant, however, makes this conclusory assertion without stating any underlying facts to support it. Defendant simply states that the claims of at least one Plaintiff must exceed $75,000 because Plaintiffs have requested all assessments they were required to pay under the No Net Cost Act, Plaintiffs have asserted breach of contract claims related to the 2005 marketing season, and Plaintiffs have requested attorney's fees. Plaintiffs' complaint does not contain any information concerning the amount of assessments any Plaintiff paid to Stabilization or the value of the contract Defendant allegedly breached, and

Defendant has not provided the Court with this information. It is the Defendant's burden to prove by a preponderance of the evidence that the jurisdictional amount is met, and the Defendant's unsupported conclusory allegations concerning the value of Plaintiffs' various claims are insufficient to carry this burden.

Second, Defendant asserts that the amount in controversy requirement is met because Plaintiffs' claims involving corporate waste are akin to shareholder derivative claims and should therefore be aggregated. Specifically, Defendant states that Plaintiffs have alleged that Stabilization wrongfully used its retained earnings to purchase a cigarette manufacturing facility in Timberlake, North Carolina (the "Timberlake facility"). Because this claim involves an alleged injury to the corporation, Defendant contends that the corporation is the real party in interest, and therefore, the amount in controversy is determined by looking at what is actually due to the corporation. Accordingly, Defendant contends that the amount in controversy requirement is met because the facility was purchased for more than $25,000,000, and the facility's annual operating budget exceeds $75,000.

The claims of multiple plaintiffs cannot be aggregated when the plaintiffs' claims are separate and distinct. Snyder, 394 U.S. at 336. But the claims of multiple plaintiffs can be aggregated when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Id. at 335 (emphasis added). Here, the Defendant relies on two cases in support of its assertion that Plaintiffs' claim involving the Timberlake facility should be measured by looking to the facility's total value and not at Plaintiffs' potential pro rata recovery.

10

The first case Defendant relies on <u>Bernstein v. Levenson</u>, 437 F.2d 756 (4th Cir. 1971). In <u>Bernstein</u> the plaintiffs brought a shareholder's derivative action to enforce a right on behalf of the corporation, and the Fourth Circuit held that the amount in controversy requirement was determined by looking at the amount of recovery sought on behalf of the corporation. <u>Id.</u> at 757. The court reasoned that because the corporation was the real party in interest, the jurisdictional amount should be measured by looking at the damages sustained by the corporation. <u>Id.</u> This case, however, does not involve a claim that is brought on behalf of the corporation. Instead, the individual Plaintiffs are the real parties in interest because they are bringing individual claims directly against the corporation. As a result, <u>Bernstein</u> is inapposite and does not support Defendant's argument that this Court should look to the total value of the asset involved.

The second case Plaintiffs relies on is <u>Berman v. Narragansett Racing Ass'n</u>, 414 F.2d 311 (1st Cir. 1969). In <u>Berman</u> the First Circuit held that the plaintiffs' class action claims should be aggregated because the plaintiffs' interests were common and undivided. <u>Id.</u> at 314-15. The court in <u>Berman</u> reasoned that the plaintiffs' interests were common and undivided because the pecuniary result of a judgment in <u>Berman</u> would have been the creation of a fund that would benefit the entire class. <u>Id.</u> Thus, in <u>Berman</u> the First Circuit determined that the amount in controversy was the value of the entire fund that would be established on behalf of the class if judgment was rendered in the plaintiffs' favor. <u>Id.</u>

Relying on <u>Berman</u>, Defendant urges this Court to look to the value of the Timberlake facility in determining the amount in controversy because all members of Stabilization have

a similar interest in the corporation's alleged "waste" of assets. Unlike Berman, however, this case is not a class action, and therefore, the pecuniary result of a judgment in favor of Plaintiffs will not be the creation of a fund that benefits a class. Plaintiffs have brought individual actions directly against the corporation seeking, among other things, distribution of their interest in Stabilization's retained earnings and assets.[2] Thus, even if this Court followed Berman and determined that these Plaintiffs have a common and undivided interest in the Timberlake facility, this Court would only aggregate the claims of these Plaintiffs. This Court cannot aggregate the claims of potential plaintiffs who are not even joined in this case. Furthermore, without knowing how to calculate these Plaintiffs' individual interest in the Timberlake facility, this Court cannot properly aggregate their claims. As a result, this Court will not look to the total value of the Timberlake facility in determining whether the amount in controversy requirement is met.

For the reasons stated above, Defendant has failed to prove by a preponderance of the evidence that one of the Plaintiffs' claims exceeds $75,000. Defendant has simply failed to provide the Court with underlying facts sufficient to support its assertion that one Plaintiff has asserted claims that exceed $75,000. Accordingly, this Court does not have diversity jurisdiction over this action, and this case must be remanded unless this Court has federal question jurisdiction over this case.

---

[2]This Court is not making the determination that Plaintiffs can in fact bring a direct action to recover their alleged interest in the Timberlake facility. This Court is only pointing out that Plaintiffs have brought a direct action, and the Court will not transform Plaintiffs' direct action into a shareholders derivative action for purposes of analyzing the amount in controversy requirement.

Under 28 U.S.C.A. § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (2006). Federal question jurisdiction exists (1) if federal law creates the cause of action, or (2) if plaintiff's state law claims pose a substantial federal question. See Grable & Sons Metal Products, Inc. v. Darue Eng'g& Mfg., 545 U.S. 308, 312 (2005). Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). As Defendant in this case removed this action to federal court, the burden is on Defendant to demonstrate that federal question jurisdiction exists. See Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1281 n.5 (11th Cir. 2001).

Here, Plaintiffs have asserted (1) a claim for an accounting of their interest in Stabilization, (2) a claim for distribution of their interest in Stabilization, (3) a claim for specific performance, (4) a claim for breach of contract, and (5) a claim for attorney's fees. All of Plaintiffs' causes of action are state law causes of action. As a result, federal question jurisdiction exists only if one of Plaintiffs' state law claims poses a substantial federal question.

A state law claim raises a substantial question of federal law when federal law is an essential element of the claim, and "'the federal right or immunity that forms the basis of the claim [is] such that the claim will be supported if the federal right or law is given one construction or effect and defeated if it is given another.'" Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1290 (11th Cir. 2004) (quoting Mobil Oil Corp. v. Coastal Petroleum

13

Co., 671 F.2d 419, 422 (11th Cir. 1982)). Defendant argues that Plaintiffs' claim for an accounting of their interest in Stabilization poses a substantial federal question because it requires the Court to declare Plaintiffs' rights in assessments that were collected pursuant to the federal No Net Cost Act. Defendant, however, has failed to show that the resolution of any federal question is necessary to determine Plaintiffs' interest in Stabilization and its assets. Because Plaintiffs' causes of action are not created by federal law and Defendant has not demonstrated how the resolution of Plaintiffs' state law causes of action requires an interpretation of federal law, federal question jurisdiction does not exist.

Having determined that this Court has neither diversity jurisdiction nor federal question jurisdiction, this Court must remand the action to the Superior Court of Berrien County. Plaintiffs' Motion to Remand is therefore granted.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is granted.

**SO ORDERED**, this the 6th day of November, 2007.

*/s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc